**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

THOMAS MARIO COSTANZO,
*Defendant-Appellant.*

</td>
<td>

No. 18-10291

D.C. No.
2:17-cr-00585-GMS-1

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, Chief District Judge, Presiding

Argued and Submitted March 3, 2020
Phoenix, Arizona

Filed April 17, 2020

Before: Michael Daly Hawkins, John B. Owens,
and Mark J. Bennett, Circuit Judges.

Opinion by Judge Hawkins

# SUMMARY[*]

## Criminal Law

Affirming a conviction on five counts of money laundering, the panel held that a reasonable trier of fact could have found beyond a reasonable doubt that the money-laundering transactions at issue, in which payment was made via bitcoin, affected interstate commerce in some way or to some degree, as required under 18 U.S.C. § 1956.

The panel dealt with other issues in a separate memorandum disposition.

## COUNSEL

Daniel L. Kaplan (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Phoenix, Arizona; for Defendant-Appellant.

Gary M. Restaino (argued), Assistant United States Attorney; Krissa M. Lanham, Deputy Appellate Chief; Michael Bailey, United States Attorney; United States Attorney's Office, Phoenix, Arizona; Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

HAWKINS, Circuit Judge:

This appeal involves what would appear to be a straightforward money laundering transaction with a twist: payment was made via bitcoin, a form of digital currency based on mathematical algorithms that is not controlled by any country, bank, or individual. Appellant contends that the transfer did not have the requisite effect on interstate commerce, an element of each of the charged offenses.[1] Because we conclude that the transfer in question, which involved the use of an Internet or cellular network connected Personal Computer Device (PCD) to transfer bitcoin (together with the digital code necessary to unlock the bitcoin) to the digital wallet of another Internet or cellular network connected PCD, had the necessary effect on interstate commerce, we affirm.[2]

## I. *Background.*

Around 2014, Thomas Costanzo was residing in Arizona and making a living selling bitcoin through peer-to-peer transactions. Operating under the pseudonym Morpheus

---

[1] Appellant was charged with five counts of violating 18 U.S.C. § 1956(a)(3)(B), each of which alleged he, "with the intent to conceal and disguise the nature, location, source, ownership, and control, of property believed to be the proceeds of specified unlawful activity," conducted and attempted to conduct "financial transaction[s] affecting interstate or foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity."

[2] In a separate memorandum disposition filed simultaneously with this opinion, we deal with the other issues raised in this appeal, including evidentiary objections, Guideline calculations and Supervised Release conditions.

Titania, Costanzo maintained a profile on localbitcoins.com, a website connecting prospective bitcoin buyers and sellers. Costanzo was "very enthusiastic" about bitcoin and promoted it as the "honey badger" of money—the "most fearless currency" with "no regard for national borders anywhere" and protected by encryption.

Costanzo's online profile caught the attention of two Internal Revenue Service Special Agents who were investigating the purchase and sale of digital currency to facilitate illegal activity. Costanzo's localbitcoins.com profile stood out to the agents because Costanzo had significantly more feedback and a higher peer rating than other users. His profile also advertised, among other things, that Costanzo was willing to exchange between $15,000 to $50,000 cash for bitcoin. After finding Costanzo's profile, the agents submitted a request for an undercover operation and, once approved, made contact with Costanzo.

Over the next two years, multiple undercover agents arranged and completed a series of cash-for-bitcoin transactions with Costanzo. Special Agent Sergei Kushner was the first to contact Costanzo by sending a text message to the phone number listed on Costanzo's localbitcoins.com profile. Agent Kushner stated that he wanted to buy $3,000 worth of bitcoin from Costanzo "as soon as possible" but that he was "stuck in NYC" and would "need a lot more over [the] next few weeks." In March 2015, Agent Kushner and Costanzo met at a coffee shop to complete the contemplated transaction. During the meeting, Agent Kushner intimated that the bitcoin he purchased would facilitate illicit activity. He explained that "discretion" was important, the government could have issues with the product he imported, the bitcoin he purchased would be going "south of the border," and his business involved picking up product in

Arizona and shipping it to New York in a concealed manner. Costanzo accepted $2,000 in cash from Agent Kushner and transferred bitcoin to Agent Kushner's cell phone.

Agent Kushner and Costanzo met again two months later to complete another cash-for-bitcoin exchange. During this meeting, Agent Kushner explicitly told Costanzo that he was trafficking black tar heroin. Costanzo laughed and replied, "I know nothing." Costanzo then went forward with the arranged transaction. He accepted $3,000 in cash and transferred bitcoin to Agent Kushner's cell phone. Agent Kushner received the bitcoin through the digital wallet application Mycelium wallet, which also allows users to communicate via encrypted text messaging. Costanzo had recommended that Agent Kushner download the application to facilitate their transactions.

Several months later, Agent Kushner contacted Costanzo to arrange another bitcoin purchase; this time, however, he asked Costanzo to meet with his business partner. That partner, Special Agent Thomas Klepper, then struck up a texting exchange with Costanzo, who instructed Agent Klepper to message him through an application that encrypts messages. When Agent Klepper and Costanzo met in October 2015, Agent Klepper again discussed the illicit nature of their business, and Costanzo stated that he "knew, but [didn't] want to know." Agent Klepper then gave Costanzo $13,000 in cash, and Costanzo transferred bitcoin to Agent Klepper's cell phone. The next month, in November 2015, Agent Kushner met with Costanzo and exchanged $11,700 in cash for bitcoin. In each instance, the undercover agents made clear to Costanzo that the purpose of the transaction was to conceal illegal activities.

By early 2016, the Drug Enforcement Agency Task Force of the Scottsdale Police Department had joined the

investigation.  Detective Chad Martin led the charge.  He independently investigated Costanzo and arranged several undercover meetings.  Detective Martin and Costanzo first met in September 2016 to exchange $2,000 in cash for bitcoin.  Detective Martin met with Costanzo again in November 2016 to exchange $12,000 in cash for bitcoin and in February 2017 to exchange $30,000 in cash for bitcoin.  In April 2017, Detective Martin arranged a meeting with Costanzo to exchange his largest sum yet—$107,000.  Again, Costanzo accepted the cash and transferred the bitcoin to a digital wallet through an application on Detective Martin's cell phone.  Detective Martin expressly told Costanzo that the cash came from drug operations, but Costanzo replied that he did not need to know.  After the transaction was complete, Detective Martin gave a signal, and Costanzo was arrested.

## II. *Procedural History.*

Costanzo was indicted, in relevant part, on five counts of money laundering predicated on (1) the May 2015 $3,000 transaction with Agent Kushner; (2) the October 2015 $13,000 transaction with Agent Klepper; (3) the November 2015 $11,700 transaction with Agent Kushner; (4) the February 2017 $30,000 transaction with Detective Martin; and (5) the April 2017 $107,000 transaction with Detective Martin.  Costanzo entered a plea of not guilty and proceeded to a five-day jury trial.  At trial, the government solicited testimony and presented documents and audio recordings establishing Costanzo's transactions with Agent Kushner, Agent Klepper, and Detective Martin.

The jury also heard extensive evidence about bitcoin and the transfer and verification of digital currency: "Bitcoin is an alternative currency that can be transferred electronically anywhere in the world with no bank and no government

forms. . . . The Bitcoin network uses state-of-the-art cryptography . . . [and is] accessible from any Wi-Fi connection or mobile device." Bitcoin may be exchanged either through a commercial exchange, such as Coinbase, or a direct peer-to-peer network.

To make a peer-to-peer transfer, parties may use digital wallets on smartphones. QR code is used to scan the public address needed to transfer bitcoin from the digital wallet on one phone to the digital wallet on another phone, and the recipient can then access the bitcoin using a private key. When a user transfers bitcoin to another user's digital wallet, the recipient must "wait a certain amount of time while the Blockchain . . . confirm[s] all the coins in that . . . block." The blockchain—available on Blockchain.info—is the public ledger containing all transactions that have occurred on the bitcoin network. A peer-to-peer transfer generally incurs a "common fee" or "miner transaction fee" associated with this verification process. And the verification may occur anywhere in the world. In fact, Detective Martin retained, and the jury saw, a screenshot depicting the verification for the uncharged September 2016 transaction being performed by a node in Germany.

At the conclusion of the prosecution's case, Costanzo made a general motion for acquittal. The district court denied the motion in connection with the five money laundering charges under 18 U.S.C. § 1956(a)(3)(B), and Costanzo rested.

Ultimately, the jury found Costanzo guilty on all five counts of money laundering, and the district court imposed a 41-month sentence followed by 36 months of supervised release. Costanzo now appeals, arguing that the government failed to prove that the transactions affected interstate commerce in any way.

## III.    *Standard of Review.*

"We review de novo if there is sufficient evidence of the interstate commerce element of an offense." *United States v. Mahon*, 804 F.3d 946, 950 (9th Cir. 2015). We view the evidence "in the light most favorable to the prosecution and determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).[3]

## IV.    *Discussion.*

To sustain the money laundering charges brought against Costanzo, the government was required to prove that Costanzo "conduct[ed] or attempt[ed] to conduct a financial transaction" with the intent "to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity." 18 U.S.C. §§ 1956(a)(1), (a)(3)(B). A "financial transaction" is, among other things, "a transaction which in any way or degree affects interstate or foreign commerce [] involving the movement of funds by wire or other means or [] involving one or more monetary instruments." *Id.* § 1956(c)(4).

The "nexus with interstate commerce is both a jurisdictional requirement and an essential element of the offense." *United States v. Bazuaye*, 240 F.3d 861, 863 (9th Cir. 2001) (quoting *United States v. Ladum*, 141 F.3d 1328, 1339 n.2 (9th Cir. 1998)). But the connection need not be extensive; the prosecution need only show that the

---

[3] The government urges that the proper standard of review is manifest injustice. We need not resolve this argument because we conclude that the result is the same under either standard.

transaction affected interstate or foreign commerce "in any way or degree." 18 U.S.C. § 1956(c)(4). For example, the intrastate handoff of cash that ultimately leads to a wire transfer of credit from a foreign country to the United States affects interstate or foreign commerce "in any way or degree." *United States v. Anderson*, 391 F.3d 970, 975–76 (9th Cir. 2004); *see also United States v. Jenkins*, 633 F.3d 788, 804 (9th Cir. 2011) (concluding that "transfer of funds by wire and writing checks to fund investments and to purchase vehicles" affected interstate commerce); *cf. United States v. Hanigan*, 681 F.2d 1127, 1131 (9th Cir. 1982) (explaining that the term "commerce" is not limited to "legal" commerce for purposes of Hobbs Act robbery).

We have long recognized that the Internet and the "nation's vast network of telephone lines" are instrumentalities of and "intimately related to interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 952–53 (9th Cir. 2007). Indeed, "'[t]he Internet engenders a medium of communication that enables information to be quickly, conveniently, and inexpensively disseminated to hundreds of millions of people worldwide' . . . and is 'a valuable tool in today's commerce.'" *Id.* at 952–53 (quoting *United States v. Pirello*, 255 F.3d 728, 729–30 (9th Cir. 2001)). To that end, we have held that a defendant's creation of a website in one state, maintenance of that site in another state, and evidence that the website was uploaded to servers in several other states sufficiently proved that the threats the defendant posted to that site were distributed in interstate commerce. *Id.* at 953.

Here, the government presented evidence regarding Costanzo's business; his use of global platforms; and the transfer of bitcoin through a digital wallet, which by its nature invokes a wide and international network. Costanzo

advertised his business through localbitcoins.com—a website based outside of the United States. He encouraged the undercover agents to download applications from the Apple Store or other similar platforms to facilitate their communications and transactions. He then utilized those applications to engage in encrypted communications with the agents to arrange the transfers. Then, in each transaction, Costanzo and the agent used those applications on their smartphones to transfer bitcoin from one digital wallet to another. Each transaction was complete only after it was verified on the blockchain. Viewing all of this evidence in the light most favorable to the government, we are satisfied that the evidence is sufficient for some trier of fact to find the "minimal" interstate commerce nexus required under § 1956. *See Bazuaye*, 240 F.3d at 865.

## V.    *Conclusion.*

Viewing the record evidence here in the light most favorable to the prosecution, a reasonable trier of fact could have found beyond a reasonable doubt that the transactions affected interstate commerce in some way or to some degree. We, therefore, must affirm.

**AFFIRMED.**